IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 04-61-KAJ |
| ) | |
| GEORGE BLOOD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

I.   Introduction

Defendant George Blood ("Blood" or the "Defendant") is charged in a superceding indictment with six counts of wire fraud, in violation of 18 U.S.C. §1343 (Counts 1 through 6), three counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 7 through 9), and three counts of money laundering, in violation of 18 U.S.C. § 1957 (Counts 10 through 12). He is also charged in all of those counts with aiding and abetting each of those offenses, in violation of 18 U.S.C. § 2. (Docket Item ["D.I."] 23.) The charges are based on allegations that Blood was involved in the operation of two companies, Beneficial Growth Systems, Inc. ("BGS") and Greystone International, Ltd. ("Greystone"), which were vehicles for so-called "Ponzi" schemes that bilked investors in what were represented to be "Private Placement Bank-Secured High-Yield Investment Programs." (*Id.* at ¶ 2.) The case is scheduled for a five-day jury trial on the 19th through the 21st and the 26th and 27th of September. (D.I. 32.)

Presently before me are competing motions in limine filed by the Government and the Defendant. For the reasons that follow, the issues presented are resolved in favor of the Government.

II.     Background

The background of this case is set forth in the February 22, 2005 Memorandum Order denying the Defendant's motion to suppress. (D.I. 20.) That Order describes in detail the facts set forth in an affidavit submitted in support of a search warrant effected during the course of the investigation of the Defendant's activities.

The Government has filed a motion (D.I. 26; the "Government Motion") asking for a ruling on the following four evidentiary applications: (1) that, should Blood choose to testify, his January 9, 2004 conviction in the United States District Court for the Middle District of Tennessee on two counts of possession of counterfeit and forged securities (the "Tennessee Conviction") would be admissible under Federal Rule of Evidence 609 (*id.* at ¶¶ 2- 4); (2) that no reference be permitted at trial regarding whether other individuals involved in the same alleged schemes or similar schemes have been arrested or charged with crimes (*id.* at ¶ 5); (3) that a Government exhibit demonstrating that Blood did not file tax returns for the years 1999 and 2000 be admitted to prove motive (*id.* at ¶ 6); and (4) that certain bank records whose authenticity is supported by affidavits submitted pursuant to Federal Rule of Evidence 902(11) be deemed to have a sufficient evidentiary basis to be considered authentic and non-hearsay (*see id.* at ¶¶ 7- 9).

Blood did not file a document in opposition to the Government Motion but did file his own motion in limine (D.I. 25; the "Defense Motion"), which amounts to an opposition on certain issues also raised by the Government. He seeks an order that (1) prevents the Government from introducing any evidence regarding his failure to file a tax return for 1999 or 2000 (*id.* at ¶ 1); (2) prevents any testimony that BGS or

Greystone were offering "bank debenture programs" or "capital enhancement programs" and that such programs are fraudulent (see id. at ¶ 2); and (3) any evidence of the Tennessee Conviction for purposes of impeachment (id. at ¶ 3). The Government did respond to the Defense Motion, reiterating its desire to have the Tennessee Conviction admitted and to have evidence of the failure to file tax returns admitted. (D.I. 28 at ¶¶ 1, 3.) The Government also stated that it would not seek to admit testimony that "bank debenture programs" or "capital enhancement programs" are, as a class, fraudulent but that there is no prejudice to referring to the BGS and Greystone programs as "bank debenture programs." (Id. at ¶ 2.)

III.   Discussion

Distilling the competing motions, the matters in dispute are whether the Tennessee Conviction is admissible to impeach Blood, whether the services offered by BGS and Greystone may be referred to as "bank debenture programs," and whether the Government can introduce evidence of Blood's failure to file tax returns. The first two issues are the simplest. Blood's Tennessee Conviction is for possession of counterfeit and forged securities "with the intent to deceive ... ." (See D.I. 28 at Ex. A.) Obviously, that is a crime involving dishonesty. Federal Rule of Evidence 609(a)(2) provides that, "[f]or the purpose of attacking the credibility of a witness, ... evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment." The language of the Rule is unequivocal and its application plain. The Tennessee Conviction will be admitted to impeach the Defendant, if he takes the stand.

As to the alleged prejudice of referring to the BGS and Greystone services as "bank debenture programs," Blood has provided no explanation of how such a reference, in and of itself, would be prejudicial at all, let alone being unfairly prejudicial. Consequently, he has failed to demonstrate that the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice," see F.R.E. 403, and admission of the evidence therefore will not be denied on the basis proposed.

The admissibility of evidence relating to Blood's failure to file tax returns is more questionable. The Defendant argues that the evidence is not admissible because "[t]he probative value in admitting the ... evidence is strongly outweighed by the unduly prejudicial nature of the evidence ... ." (See D.I. 25 at ¶ 1.) There is, indeed, persuasive authority for the proposition that evidence of an accused's poverty, standing alone, is generally not admissible to prove motive to commit a crime. On its own, such evidence "is of slight probative value and would be unfairly prejudicial to poor people charged with crimes." *United States v. Mitchell*, 172 F.3d 1104, 1108 (9th Cir. 1999). It has rightly been observed that, "[t]he problem with poverty evidence without more to show motive is not just that it is unfair to poor people ... but that it does not prove much, because almost everyone, poor or not, has a motive to get more money." *Id.* at 1109.

Nevertheless, "[t]o determine whether evidence of impecuniousness has relevance, and that its probative value is not outweighed by the risk of unfair prejudice, it is necessary to consider the facts of the particular case." *Id.* at 1108. Such evidence may be admissible if it is linked with other evidence showing, for example, a sudden change in financial circumstances or a particular, pressing financial need, such as an

4

expensive drug habit. *See id.* at 1108-09 (explaining admissibility of poverty evidence in *United States v. Feldman*, 788 F.2d 544 (9th Cir. 1986) as based on defendant's being financially "squeezed, not just poor", and explaining admissibility of such evidence in *United States v. Jackson*, 882 F.2d 1444 (9th Cir. 1989), as based on an abrupt and unexplained improvement in the defendant's financial status); *United States v. Reed*, 639 F.2d 896, 907 (2d Cir. 1981) ("defendant's belief that he is in financial difficulty is admissible to show motive, and not unduly prejudicial" because evidence showed he and spouse were "eight months behind in their mortgage payments and threatened [with ] foreclosure proceedings"). For monetary crimes, evidence of an abrupt improvement in financial status goes beyond proof of motive and becomes circumstantial evidence of the crime itself. *United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001) (citing *Mitchell,* 172 F.3d at 1109).

Because of the sensitivity of poverty evidence, I approach the present dispute with considerable caution, as several courts, including the Third Circuit, have advised. *See Mitchell*, 172 F.3d at 1108-09; *United States v. Zipkin*, 729 F.2d 384, 390 -91 (6th Cir. 1984) (advising that, "[g]iven the inferences which must be drawn from such evidence, a trial court should be extremely cautious in admitting such evidence and the Government must have more than mere conjecture that impecuniosity was a motive, lest the poor be in position of being at greater suspicion of having committed a crime ... ."); *cf. United States ex rel Mertz v. New Jersey,* 423 F.2d 537, 541 (3d Cir.1970) (observing in habeas case challenging a state robbery conviction in which evidence of defendant's unemployment had been admitted, "[i]t is fundamental to our conception of

5

a fair trial that equality of treatment must be afforded to all without regard to differences in social status or economic condition.") Nevertheless, I am persuaded that the evidence in question, at least on the basis of the present pretrial proffer, should not be excluded under Federal Rule of Evidence 403.

The balancing I have undertaken includes the following. First, there is no evidence or argument offered to suggest that Blood was poverty stricken. Blood himself notes that during the two years in question, 1999 and 2000, he was living with, and presumably supported by, the woman to whom he is now married, and that she had an annual income of $85,000. (D.I. 25 at n.1.) Thus, the specific concern about unequal justice for the poor does not appear to be implicated here.

Second, the Government's proffer includes the assertion that Blood "was using Greystone to support a lifestyle that his income could not." (D.I. 28 at ¶ 1.) As a specific example, the Government states that the Defendant had obligated himself, through a corporate entity, to purchase a large and expensive block of shares in another company, which required him to make payments of $30,000 per month for some period of time. (*Id.*) There is, therefore, more than simply a comment on his financial state being offered to prove motive. Whether the jury will accept it or not, a non-speculative argument can be made on the basis of the proffered evidence that the Defendant was living beyond his means and that he had created financial pressures for himself wholly inconsistent with any lawful source of funds available to him.

Finally, the character of the charge itself is significant. This is not a circumstance where the Government is trying to stretch logic and urge an unfair inference, as would be the case, for example, if it suggested that a poor person is more likely to commit a

violent crime. The purely pecuniary charges against the Defendant in this case are such as to "justify the use of evidence of financial embarrassment in order to show the accused's knowledge and motive ... ." *United States ex rel Mertz,* 423 F.2d at 541. I therefore conclude that, given the current state of the record, I cannot grant the Defendant's motion in limine on this issue and that, at least provisionally and subject to the actual development of the record at trial, the Government's contrary motion should be granted.

IV.   Conclusion

Accordingly, based on the foregoing reasons and authorities, it is hereby ORDERED that, to the extent stated herein, the Government's Motion is GRANTED and the Defendant's Motion is DENIED.

                                                                                                      _____
                                                                                                      UNITED STATES DISTRICT JUDGE

August 26, 2005
Wilmington, Delaware